UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

TANYA WELLS, ON BEHALF  :
OF HER MINOR CHILD, S.G.,  :
  :
and  :
  :
YOLANDA THOMAS, ON BEHALF :
OF HER MINOR CHILD, J.G.,  :
  :
  Plaintiffs  :
  :
v.  :  Civil Action No.: 16-cv-00901-ESH
  :
DONALD L. HENSE, *et al.*  :
  :
  Defendants.  :
_____

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS

COME NOW Defendants Donald L. Hense (hereinafter "Hense"), Friendship Public

Charter School, Inc. (hereinafter "Friendship"), and Friendship Collegiate Academy Public

Charter School (hereinafter "Academy"), by counsel, and pursuant to Rule 12 of the Federal

Rules of Civil Procedure, move to dismiss the Plaintiffs Complaint with prejudice, and in support

state as follows:

## I.  SUMMARY OF FACTS

The Complaint alleges that Plaintiffs were attending tenth grade at Defendant Academy,

a public charter school formed pursuant to D.C. Code §38-1802.01 *et seq.* and owned and

operated by Defendant Friendship ¶¶ 17-19, 28. On May 19, 2015, Plaintiffs reported to their

math class. The math teacher was not present because of a medical appointment. A substitute

teacher was not designated. No teacher or other school official was supervising or monitoring

that classroom. ¶¶ 30-35. A student, D.B. skipped his foreign language class next door and entered the math class with the Plaintiffs. D.B. went to the back of the class, stood behind Plaintiff, S. G. and performed unwanted sexual grinding and thrusting. D.B. did this again five minutes later. ¶¶ 36, 42-50. Another student, E.E. did the same to Plaintiff J.G. ¶¶ 51-58. Other students gathered in the class allegedly did not intervene to stop the students and did not notify school officials. ¶¶ 59-60.

Plaintiffs reported the incident to an individual in a weekly mentoring group the next day. That individual reported the incident to an Academy official, who reported the incident to the principal. That same day, May 20, 2015, the plaintiffs' mothers were notified. The plaintiffs' mothers immediately reported to the Academy and were advised of the incident. ¶¶ 84-93. The Complaint alleges that the mothers were told that the offending individuals would be suspended and/or arrested. But the Plaintiffs later found out that no suspensions took place. However, the the Metropolitan Police Department (MPD) was involved by the Academy in the investigation. But, according to the Complaint, the Defendants and the MPD failed to interview all students present in the math class for the incident. ¶¶ 95-99.

The Complaint alleges that Defendants knew or should have known that failing to monitor, supervise, or investigate the hall and math classroom would place the students in a zone of danger, subjected Plaintiffs to offensive sexual acts, sexual assault and battery, and otherwise caused the harm. ¶¶ 61-80.

The Complaint alleges that Defendants failed to take steps to ensure the safety of the Plaintiffs after their investigation, did not adequately assist the Plaintiffs in coping with the incident, and did not take adequate disciplinary action against the offenders. ¶¶ 100-112. By failing to take additional actions, Plaintiffs allege that the Defendants passively endorsed the

inappropriate sexual harassment and assault.  In addition, the alleged failure to investigate and discipline the offenders created an unsafe and hostile learning environment, caused a drop in the plaintiff's grades, subjected them to emotional and psychological trauma. ¶¶ 100-112

In addition, the Complaint alleges that the Defendants' failure to investigate and adequately discipline the offenders subjected the Plaintiffs to gossip, and ostracization by other students.  Other students called Plaintiff S.G. a snitch. ¶¶ 114-119.  The Plaintiffs complained that the Defendants did not do anything about the actions of other students.  ¶¶ 120-121.

The Complaint, however, does not allege that Plaintiffs were subject to subsequent acts of sexual harassment by the offenders, D.B. or E. E. Nor does it allege any subsequent sexual harassment by school officials.  Nevertheless, the Defendants are allegedly liable for the aftermath based on their inadequate investigation and disciplinary measures.  ¶¶ 122-139.  The Complaint cites a failure to adequately train its employees on the anti-harassment policy and alleges that the failure to implement the policy promoted further violations.

These factual allegations are followed by six counts:

COUNT I Violation of Title IX "The School's Deliberate Indifference to Alleged Sexual Harrassment"; COUNT II Violation of Title IX "Retaliation by Withholding Protections Otherwise Conferred by Title IX"; COUNT III 42 U.S.C. § 1983; COUNT IV *Monell* Liability for Failure to Train and Supervise as to Response to Sexual Assault 42 U.S.C. § 1983; COUNT V Gross Negligence; and COUNT VI Negligent Infliction of Emotional Distress.

## II. SUMMARY OF ARGUMENT

The Plaintiffs were allegedly subjected to disgusting and unacceptable acts by other students.  But they did not suffer a violation of Title IX or a violation of their Constitutional rights.  On May 19, 2015, two students took advantage of an unsupervised classroom.  They

allegedly engaged in unwanted sexually offensive conduct against Plaintiffs. The Defendants investigated and disciplined the offenders. The Defendants accommodated the Plaintiffs educational needs the remainder of the school year.

Nevertheless, the Plaintiffs complained that because the offenders were not adequately disciplined and other students gossiped about the incident, the Defendants violated Title IX and Plaintiffs Constitutional rights. That conclusion is entirely implausible based on the facts alleged and is not supported by well-established law.

Based on the facts alleged, Plaintiffs were not subjected to any sexual harrassment subsequent to May 19, 2015. The fact that they were personally dissatisfied with the disciplinary actions does not make this case into a Title IX violation. Likewise, the fact that other students gossiped, ostracized the Plaintiffs, or called the Plaintiffs "snitches" does not make this a Constitutional issue. Nor does the Complaint allege facts sufficient to support claims under District of Columbia common law for gross negligence or negligent infliction of emotional distress.

Each and every one of the Plaintiffs' claims for relief should be dismissed.

The Complaint fails to state a claim upon which relief can be granted under Title IX (Counts I and II) because Plaintiffs were not subjected to harassment based on sex. Nor was any harassment so severe, pervasive, and objectively offensive that it created a hostile or abusive educational environment. Furthermore, the plaintiff failed to allege facts sufficient to meet the standard set forth by the Courts by showing that the defendants had actual knowledge of harassment but demonstrated a deliberate indifference to it. The Courts require that the school's response be clearly unreasonable in light of the circumstances. Plaintiffs do not come close to meeting this standard.

Next, the Complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983 (Counts III and IV), because the Plaintiffs failed to adequately allege facts sufficient to clear the initial threshold issue that defendants acted under color of state law or were otherwise state actors. In addition, plaintiffs fail to allege facts that would shock the conscience as required to prove a violation of due process rights under the Constitution. Similarly, the plaintiffs fail to allege that government policy or custom caused the alleged violation of constitutional rights.

Because the complaint does not adequately plead any basis of federal jurisdiction, this court lacks subject matter jurisdiction. If the Court maintains jurisdiction, it should nevertheless dismiss Counts V and VI.

The Complaint also fails to state a claim for gross negligence (Count V). The law of the District of Columbia generally does not recognize degrees of negligence. When it has been defined, the Courts have explained gross negligence as the failure to exercise even slight care, conduct that would shock fair-minded men, or an extreme departure from the ordinary standard of care. Similarly, courts have defined gross negligence as disregard for a risk that was so obvious that the actor knew it was highly probable the harm would occur. Even with all reasonable factual inferences construed in the Plaintiffs' favor, the conduct fails to meet the standard.

The Plaintiffs failed to state a claim upon which relief can be granted for negligent infliction of emotional distress (Count VI). Negligent infliction of emotional distress results from defendant placing the plaintiff in a "zone of physical danger" due to the defendant's negligence or from defendant undertaking special relationship concerning the Plaintiffs well-being. The facts do not support this cause of action under even the most liberal interpretation.

Finally, with regard to all counts, the Plaintiffs fail to set forth any facts that would form the basis of personal liability against Defendant Hense. Nor do the Plaintiffs allege facts that Defendant Hense was involved in any of the transactions such that liability would accrue to him in an "official" capacity as alleged.

Therefore, for the reasons stated below, this Court should dismiss the Plaintiffs' Complaint with prejudice.

## III. STANDARD OF REVIEW - Rule 12(b)(6).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must grant a motion to dismiss if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

The Court also explained in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

The Court highlighted two important rules that direct consideration of a motion to dismiss under Rule 12(b)(6). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). Second, consideration of a motion to dismiss under Rule 12(b)(6) is "context-specific," meaning that the Court is allowed to impose on the analysis its "judicial experience and common

sense." *Iqbal*, 556 U.S. at 679 (citing the Second Circuit Court of Appeals' observation in its decision below).

The *Iqbal* Court concluded that legal conclusions and factually implausible conclusions, are not entitled to the assumption of truth . *Id.* Furthermore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - that the pleader is entitled to relief." *Id.* (internal citations and quotations omitted).

## IV. ARGUMENT

### A. Count I of the Plaintiff's Complaint fails to state a claim for Violation of Title IX against Defendants Friendship and Academy for "Deliberate Indifference to Alleged Sexual Harrassment."

Under Title IX, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). This prohibition on sex-based discrimination applies to student-on-student sexual harassment and an educational institution's response to such harassment. *See Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 646-47 (1999).

Where a plaintiff alleging student-on-student harassment seeks to impose liability on an institution under Title IX, the facts must demonstrate that: (1) the plaintiff was a student at an educational institution receiving federal funds; (2) the plaintiff was subjected to harassment based on her sex; (3) the harassment was so severe, pervasive, and objectively offensive that it created a hostile or abusive educational environment; and (4) the educational institution had actual knowledge of the harassment but was deliberately indifferent to it. *Id.* at 650. In addition, "A Title IX violation can be based on deliberate indifference before an attack that makes a

plaintiff more vulnerable to the attack or, in certain circumstances, deliberate indifference after an attack that causes a plaintiff to endure additional discrimination." *Doe v. Bibb Cty. Sch. Dist.*, 126 F. Supp. 3d 1366, 1376 (M.D. Ga. 2015)

In addition to proving that the defendant had actual notice of severe, pervasive, and objectively offensive harassment, a Title IX plaintiff must also show that the defendant's response to the third-party harassment was so inadequate that it constitutes "deliberate indifference." Mere negligence is insufficient. *Davis,* 526 U.S. at 642. In *Davis,* the Supreme Court held that a school district is liable under Title IX "only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of ... harassment of which it had actual knowledge". *Id.*

When the allegations involve student-on-student harrassment, an institution is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis,* 526 U.S. at 648. Furthermore, Title IX does not require that an institution "remedy" peer harassment, but simply that it "respond to known peer harassment in a manner that is not clearly unreasonable." *Id.* at 648–49. In other words, a defendant is considered "deliberately indifferent" to a claim of student-on-student harassment only where the institution's response to such a claim is "*clearly unreasonable* in light of the known circumstances." *Davis*, 526 U.S. at 648 (emphasis added).

The Supreme Court has made clear that the burden placed on Title IX plaintiffs is a difficult one. "This is not a mere 'reasonableness' standard." *Id.* Rather, "[t]his high standard precludes a finding of deliberate indifference *in all but limited circumstances.*" See *Doe v. Bd. of Educ.*, 982 F. Supp. 2d 641, 654 (D. Md. 2013) (citing *Davis*, 526 U.S. at 643) (internal quotations omitted and emphasis added). The Supreme Court has instructed federal courts that,

"[i]n an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649. Accordingly, the Court should find that a school's response was not "clearly unreasonable" and grant a motion to dismiss where the plaintiff has failed to assert sufficient facts to establish deliberate indifference.

Importantly, the plaintiff's mere dissatisfaction with the outcome of an institution's response is insufficient to prevail under Title IX. *See, e.g., Bracey v. Buchanan*, 55 F. Supp. 2d 416, 420 (E.D. Va. 1999) ("That the Plaintiff is dissatisfied with the outcome of the [institution's] investigation has no bearing on this Title IX claim, absent an allegation that [the institution] showed deliberate indifference."). A school's mere negligence in addressing a sexual assault does not constitute deliberate indifference under Title IX. Nor does a school's failure to provide the remedy wanted by the victim meet the test. *See, e.g., KF v. Monroe Woodbury Cent. Sch. Dist.,* 531 Fed.Appx. 132, 134 (2d Cir.2013); *Ostrander v. Duggan,* 341 F.3d 745, 751 (8th Cir.2003); *Doe v. Bd. of Educ. of Prince George's Cnty.,* 982 F.Supp.2d 641, 657–58 (D.Md.2013), *aff'd* 605 Fed.Appx. 159 (4th Cir.2014)(observing that a plaintiff does not have the "right to make particular remedial demands" in a Title IX action); *Oden v. Northern Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006)(stating that "[a]n aggrieved party is not entitled to the precise remedy that he or she would prefer").

In addition, a school will not be liable under Title IX for failing to follow its own grievance procedures or sexual harassment policy. *Doe v. Bd. of Educ. of Prince George's Cnty.,* 982 F.Supp.2d 641, 657 (D.Md.2013) (citing *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 291–92, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), for the proposition that "the failure to

follow sexual harassment grievance procedures does not prove deliberate indifference under Title IX").

 For the reasons that follow, the Plaintiffs' Complaint wholly fails to state facts sufficient to support a claim of violating Title IX.

 1. **There is no factual basis in the Complaint to infer liability on Defendants because they made the Plaintiffs somehow vulnerable to the sexually offensive acts committed by D.B. and E.E. on May 19, 2015.**

 The Complaint alleges an episode of student-on-student harassment. Specifically, students D.B. and E.E. allegedly committed sexually offensive act against the plaintiffs on May 19, 2015. Title IX requires, among other things, that the school's actual notice of and deliberate indifference to harassment either made the plaintiffs more vulnerable to an attack or subject to additional harassment following an attack.

 The Defendants in this case did not have actual notice of harassment that made the Plaintiffs vulnerable to attack. In fact, the Complaint in this case alleges the opposite. The Complaint alleges that the math teacher was absent, that a substitute teacher did not report to the math classroom, that D.B. skipped a foreign language class in the room next door, and committed the alleged sexually offensive acts without monitoring or supervision by a school official. The Complaint goes so far as to state that the room was locked from the inside and sheets of paper were placed over the windows. ¶¶ 31–39. There are no facts alleged from which the Court could infer that the Defendants had actual knowledge of sexual harassment and prior to May 19, 2015 and that the Defendants' deliberate indifference to it caused the May 19, 2015 incident. This is reinforced by the plaintiffs own focus on the Academy's efforts to remedy the situation after it was brought to school officials' attention. But the Complaint also fails to state a claim under Title IX in connection with the "resulting harassment."

2. **The Complaint fails to set forth facts that the "resulting harassment" created by its "failure to investigate and discipline the attackers" was severe, pervasive, or objectively offensive."**

The Courts have time and time again held that reciting the elements of a cause of action without factual support will not survive a motion to dismiss. The Complaint in the instant case does nothing more than make bald conclusory statements that the Plaintiffs suffered sex-based harassment after the sexually offensive acts committed by other students were reported to the school. "S.G. and J.G. endured a sexual assault and suffered sex-based harassment that was severe, pervasive and objectively offensive." ¶ 162. Count I alleges that the school's investigation was insufficient because it failed to investigate and discipline the attackers and that the failure to investigate and discipline the attackers created "resulting harassment." ¶178.

However, the Complaint wholly fails to detail any of the "resulting harassment." Nor does the Complaint adequately bring the resulting "gossip" and name calling of other students within the purview of actual Title IX sex based discrimination. Instead, the Complaint deals entirely in legal conclusions and hypotheticals. It alleges that Plaintiffs "feared that they would be blamed for the incident that occurred" but does not connect this to any action or inaction on the part of the school. Likewise, the Complaint alleges that the plaintiffs were psychologically and emotionally traumatized, not because of the schools action or inaction but because "they feared that the rumors about the subject incident would affect relationships with other Academy students." ¶¶ 131-32. The Plaintiffs allege that the emotional and psychological trauma were caused by the Defendants' failure to ensure that a substitute teacher reported to the math classroom, that the security guard failed to monitor the classroom, and the intentional acts of D.B. and E.E., rather than the action or inaction of the school in the aftermath. ¶¶ 133–39.

Furthermore, the Complaint states that the Defendants' "negligent failure to discipline . . . supports a conclusion by the student body that S.G. and J.G. were untruthful or exaggerated the sexual assault" and concludes that "the failure to enforce the policy called into question the plaintiff's integrity, sexuality, sexual behavior and their character for bringing the sexual assault to the attention of school officials." ¶¶ 155-56. Similarly, it is alleged that failing to discipline students for inappropriate behavior endorses the activity and promotes further violations. ¶ 106. Likewise, the failure to investigate left the Plaintiffs "susceptible" to psychological and emotional trauma and further harassment by their peers. ¶¶ 101-2. Despite these bald conclusory allegations of the susceptibility to further harassment, the "resulting harassment" complained of is entirely hypothetical.

Despite making conclusory allegations *ad nauseam,* the Complaint does not contain a single allegation of any subsequent actions by either D.B. or E.E. towards the Plaintiffs. Nor does the Complaint contain a single statement from an identifiable individual directed towards Plaintiffs that amounts to the sex-based harassment that gives rise to Title IX liability. Assuming, as the Plaintiffs do, that the May 19, 2015 incident constitutes a "Sexually Based Infraction" of the Parent/Student Handbook, ¶ 157, the Complaint is void of allegations of any subsequent "Sexually Based Infraction" caused by its alleged failure to discipline or follow policy.

Furthermore, to the extent that identifiable facts are alleged concerning "gossip" and "bullying" by Plaintiffs' peers following the incident, these are not so severe, pervasive, and objectively offensive that the school can be held liable under Title IX.

The actions of other students following the May 19, 2015 incident, do not come close to meeting the Courts' standard for severe, pervasive, and objectively offensive harassment. The Plaintiffs complain that other students gossiped. ¶¶ 114, 128. Also, numerous students

ostracized S.G. ¶ 115.  Finally, plaintiff mentions two incidents of "bullying" directed at S.G. And an unidentified individual called her a "snitch" because D.B. had been disciplined. ¶¶ 115–16.  First, the facts alleged are not sufficient to establish that the gossip, ostracization and name-calling was severe.  Second, there is insufficient facts alleged that it was pervasive.  Finally, it is not objectively offensive.  There is absolutely no connection between the Defendants' apparent failure to investigate and discipline and the comments by other students towards the plaintiffs. Tellingly, it is alleged that S.G. was called a snitch because D.B. was disciplined.

So even if the unidentified comments from unidentified students constitute severe, pervasive, and objectively offensive harassment, they are not a result of the defendant's failure to investigate or discipline D.B. or E.E. *See Rouse v. Duke Univ.,* 914 F. Supp. 2d 717, 725 (M.D.N.C. 2012), aff'd, 535 F. App'x 289 (4th Cir. 2013)(Motion for summary judgment granted because plaintiff offered no evidence that she suffered "additional sexual harassment in the months following her rape, by the rapist or by anyone else, much less that any such harassment was attributable to Duke's alleged failure to investigate.")

In *Dawn L. v. Greater Johnstown Sch. Dist.*, 614 F. Supp. 2d 555, 569 (W.D. Pa. 2008) A student-athlete was taunted after an episode of sexual harassment was reported to school officials.  The Court noted that the taunts and verbal harassment of plaintiff's fellow basketball players that demonstrated their loyalty to the harrasser and disfavor of the plaintiff was not actionable under Title IX.  The Court relied on *Davis,* stating that "it is not enough to show ... that a student has been teased".  Furthermore, in the *Dawn* case, as in the instant case, the taunts that were made part of the record did not appear to be sexual in nature. *Id.* at 570.

3. **The Defendants' response to the May 19, 2015 incident was not "clearly unreasonable" in light of the totality of the circumstances.**

Again, Defendants will only be considered to have demonstrated "deliberately indifferent" to a claim of student-on-student harassment where the institution's response to such a claim is "*clearly unreasonable* in light of the known circumstances." *Davis*, 526 U.S. at 648 (emphasis added). Mere negligence is not sufficient. *Id.* at 642. The facts do not establish that Defendants acted with deliberate indifference or that the response was clearly unreasonable in light of the circumstances in this case.

In this case, Plaintiffs initially reported the incident to Tiffany Green. Tiffany Green reported the incident to Mrs. Jones, an Academy official. ¶¶ 84–91. The Academy notified Plaintiffs' mothers and both mothers immediately reported to the Academy. ¶¶ 92 – 93. According to the Complaint, the Academy considered suspending the offenders and having them arrested. The Academy communicated remedial actions with both mothers. ¶ 95. The Complaint also explains that the Defendants conducted an investigation and involved the Metropolitan Police Department. ¶ 99. The Complaint alleges that the Plaintiffs were accommodated and allowed to complete their remaining class assignments for the year at home, which prevented further contact between Plaintiffs and the offenders. ¶ 109.

The Academy went above and beyond the responses that several courts have refused to find exhibited deliberate indifference. *Doe v. Bibb Cty. Sch. Dist.,* 126 F. Supp. 3d 1366, 1378 (M.D. Ga. 2015)(School District's decision to turn investigation over to the police department was not deliberate indifference); *DeCecco v. Univ. of S.C.*, 918 F. Supp. 2d 471, 494-95 (D.S.C. 2013) (no deliberate indifference when institution invited the victim of sexual harassment to file a formal complaint and no incidents of harassment subsequently occurred); *KF v. Monroe Woodbury Central Sch. Dist.*, 531 F. App'x 132, 134 (2d Cir. 2013) (no deliberate indifference

when an school responded to a report of sexual harassment by only meeting the accuser's parents, providing alternatives to the school for the plaintiff, and explaining the grievance procedures); *Ostrander v. Duggan*, 341 F.3d 745, 751 (8th Cir. 2003) (no deliberate indifference when school relied upon the fraternity system to investigate sexual assault and imposed no sanctions on the fraternity); *Ross v. Univ. of Tulsa*, No. 14-cv-484, 2016 WL 1545138, at *14 (N.D. Okla. Apr. 15, 2016) (no deliberate indifference when school only contacted the victim and took her statement).

Plaintiffs also allege they were subjected to gossip, ostracization, and being called a "snitch" after the incident. This is apparently part of the "resulting harassment" for which Plaintiffs seek to hold Defendants liable. Defendants' inability to censor its students or prevent all gossip should not subject it to title IX liability. That is unreasonable. Again the standard for deliberate indifference is that the Defendants' actions are not clearly unreasonable.

The fact that the Plaintiffs were subjectively dissatisfaction with Defendants failure to suspend D.B. and E.E. is insufficient to impose liability under Title IX. The Complaint simply alleges that "defendant Academy school officials negligently failed to implement corrective action against D.B. or E.E. for the violations of school policy, including but not limited to, bullying, disrespectful behavior, harassment and the commission of a sexually based infraction." ¶151. *See, e.g., Bracey v. Buchanan*, 55 F. Supp. 2d 416, 420 (E.D. Va. 1999) ("That the Plaintiff is dissatisfied with the outcome of the [institution's] investigation has no bearing on this Title IX claim, absent an allegation that [the institution] showed deliberate indifference."). Mere negligence in addressing sexual harassment is insufficient to support liability under Title IX. *Davis,* 526 U.S. at 642.

Therefore, Plaintiffs' Count I fails to state a claim under title IX and should be dismissed with prejudice.

**B. COUNT II fails to state a claim under Title IX for retaliation.**

Courts generally look to Title VII case law to define Title IX's applicable legal standards concerning retaliation. A plaintiff may establish a *prima facie* case of retaliation by showing that she was subjected to a materially adverse action and there is a causal connection between the protected activity and the adverse action. *See Harris v. Metropolitan Gov't of Nashville and Davidson County,* 594 F.3d 476, 485 (6th Cir.2010). *Marcum ex rel. C.V. v. Bd. of Educ. of Bloom-Carroll Local Sch. Dist.,* 727 F. Supp. 2d 657, 670 (S.D. Ohio 2010).

The Plaintiffs' Complaint in this case does not meet that requirement by any stretch. This is a case of student on student harassment. Even assuming that the Defendants did not do enough to prevent the "resulting harassment" (gossip, ostracization, and name-calling), none of these facts amount to a materially adverse action taken by the Defendants.

**C. COUNT III fails to state a claim violation of 42 U.S.C. § 1983.**

To state a claim for a violation of 42 U.S.C. § 1983, the plaintiff must allege (1) a violation of rights under the Constitution or federal law by a person acting "under color of state law" (2) that the violation was a result of a municipal policy or custom. *Harvey v. Mohammed,* 841 F.Supp.2d 164, 184 (D. D.C. 2012). "The plaintiff must allege an affirmative link such that a municipal policy or custom was the moving force behind the constitutional violation . . . The plaintiff may demonstrate such a municipal policy or custom based on the failure of the municipality to respond to a need in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations . . . Deliberate indifference is

determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, an objective standard." *Id.* at 184-5 (internal citation omitted).

Plaintiffs' Count III under 42 U.S.C. § 1983 for violation of Plaintiffs' substantive rights of due process or equal protection under the law fails for several reasons.

1. **Defendants did not act under color of state law and are not state actors and therefore, are not liable for violation of plaintiffs' substantive due process rights or equal protection under the law.**

First, Plaintiff must establish that Friendship, Academy, and Hense acted under color of state law or were state actors as a threshold matter. *Rendell-Baker v. Kohn,* 457 U.S. 830, 837 (1982); *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982). The Plaintiffs cannot do that here. "State action may be found if, though only if, there is such a 'close nexus between the state and the challenged action' that seemingly private behavior 'may be fairly treated as that of the state itself.'" *Brentwood Academy v. Tennessee secondary school athletic Association*, 531 U. S. 288, 295 (2001). The Supreme Court is made clear that neither a contractual relationship between a state and private entity nor that entities reliance on public funding is sufficient to make a state actor out of a private entity. "Acts of . . . Private contractors do not become acts of the government by reason of their significance or even total engagement in performing public contracts." In addition, the fact that a private entity is subject to extensive regulation by the state does not make it a state actor. *Rendell-Baker v. Kohn,* 457 U.S. at 841.

A private entity will not be deemed a state actor simply because it performs a function that is also served by the government. *Id.* at 842. "The question is whether the function performed has been 'traditionally the *exclusive* prerogative of the State." *Id.* (emphasis in the original).

In *Rendell-Baker* the Supreme Court held that a school for troubled students was not a state actor even though it was almost entirely dependent on public funding, was required to comply with extensive state and local regulations, and provided a function that served the public. Educational services are not the exclusive and traditional province of the state according to *Rendell-Baker*, 457 U.S. at 842. In that case, a Massachusetts law stated that Massachusetts could enter into an agreement with a public or private school, agency, or institution to provide necessary special education to identified students. The school at issue was operated by Board of Directors that were not public officials or chosen by public officials. The tuition of the state referred students was publicly funded and accounted for 90 to 99% of the school's operating budget.

In *Harvey v. Mohammed*, this Court relied on *Rendell Baker* and held that a nonprofit organization run providing room and board and nursing care to the residents under contracts with the District of Columbia was not a state actor for the purpose of a § 1983 claim. In that case, the organization employed the personnel who worked at its group homes, received Medicaid payments from the District of Columbia for the care it provided, was subject to federal and state regulations, and was licensed, inspected and monitored by the district. 841 F. Supp. 2d 164 (D.D.C. 2012).

The Ninth Circuit Court of Appeals recently held that a public charter school was not a state actor for the purpose of a 42 U.S.C. § 1983 for violation of plaintiffs' substantive rights of due process. *Caviness v. Horizon Community Learning, Inc.* 590 F. 3d 806 (9th Cir. 2010). In *Caviness,* a private nonprofit corporation was running a charter school that was defined as a "public school" by state law. The plaintiff in that case alleged that defendant was operating as an Arizona public school because it was operating a charter school and that according to the

statutory scheme all charter schools are state actors. In that case the Arizona statute designated charter schools as "public schools" and subjected charter schools to Arizona's Open Meetings Act. The Court stated that this was not dispositive. In addition, the designation as a "public school" did not distinguish charter schools for the purpose of applying the Supreme Court's holding in *Rendell-Baker* that educational services are not exclusively the province of the state. The Court concluded that the purpose of the Arizona statute providing for the establishment of charter schools, like the DC counterpart, was to provide alternative learning environments at public expense and provide academic choices for parents and pupils. That purpose did not transform a private entity performing that policy function into a state actor.

The plaintiffs allege that Defendant Friendship Charter Public School, Inc., a corporation registered in the District of Columbia, operates several public charter schools in the District of Columbia, including Defendant Friendship Collegiate Academy Public Charter School ("Academy"). ¶¶17-18. "Defendant Academy is a charter school formed pursuant to D.C. Code §38 – 1802.01 *et seq*., that provides educational services to District of Columbia students. D.C. Code §38 – 1802.04 allows for civil liability of Defendant Academy, and states that Defendant Academy is still subject to Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 et. seq." ¶ 19. Plaintiff further alleges that "Defendants Friendship and Academy were receiving federal funding as contemplated by Title IX." ¶ 141.

Nowhere in Count III or the preceding 189 paragraphs are any acts alleged that would support the conclusion that Defendants Friendship, Academy, and Hense acted under "color of state law" or undertook state action in allegedly denying Plaintiffs' substantive rights of due process or equal protection under the law. In this case, the only allegations touching on this

threshold issue are that Academy received federal funds under Title IX and that Academy was formed pursuant to statute.  Therefore, both Counts III and IV fail.

**2. Plaintiffs Constitutional rights were not violated because there is no Constitutional duty under these circumstances to protect the plaintiffs from other students.**

Second, even if this Court were to assume that the Defendants were state actors, Defendants have no affirmative duty under the Constitution to protect the Plaintiffs from private harm. "As a general matter ... a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1987); *see Butera v. District of Columbia,* 255 F.2d 637, 647 (D.C.Cir.2001). "The "purpose" of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from each other." *DeShaney,* 489 U.S. at 196.

The Court of Appeals for the District of Columbia has refused to extend Due Process protection beyond circumstances in which the plaintiff is in the physical custody of the government ("custodial exception", and circumstances where the government, by some affirmative action, has created the danger ("state endangerment theory"). *Id.* at 651 (Government officials involved plaintiff in an undercover drug bust with violent gangs). The Courts have not extended the custodial exception to schools.  *See, e.g., D.R. v. Middle Bucks Area Vo. Tech. Sch.,* 972 F.2d 1364, 1373 (3d Cir.1992) (en banc); *Doe v. Hillsboro Indep. Sch. Dist.,* 113 F.3d 1412, 1415 (5th Cir.1997) (en banc).  Nor has this Court held that a mere failure to act triggers constitutional protections.  To the contrary, Courts have held repeatedly, that a failure to act does not amount to an affirmative action sufficient to impose constitutional liability.  See  *Windle v. City of Marion,* 321 F.3d 658, 663 (7th Cir.2003) (refusing to find city

and city officials constitutionally liable for failing to protect plaintiff from ongoing molestation by her middle school teacher, despite their prior awareness of it). "[F]ailure to act simply does not amount to a constitutional violation." *Turner v. D.C.*, No. CIV.A. 04-0048 (RMC), 2006 WL 566121 (D.D.C. Mar. 7, 2006)(Motion to dismiss granted where government failed to prevent escape group home resulting in murder.); *Johnson v. D.C.*, No. CIV A 03-2548 GK, 2006 WL 2521241 (D.D.C. Aug. 30, 2006).

It is only in those limited cases where the plaintiff can prove that their constitutional rights were violated with something less than an intent to harm. That is, where a special relationship exists, the plaintiff must prove the government was deliberately indifferent to the harm that would result. Beyond those narrowly defined circumstances, which are not present here, plaintiffs must prove that the state actor exhibited an "intent to harm". The facts alleged in the instant case do not meet the exceptions to *DeShaney*. There is no allegations of any intent to harm.

### 3. Even assuming Defendants acted under color of law, and Defendants had some special relationship with Plaintiffs, Defendants' conduct was not so egregious or outrageous that it would shock the contemporary conscience.

Finally, even assuming Defendants acted under color of law, and Defendants had some special relationship with plaintiffs triggering a Constitutional duty to prevent student-on-student harassment, Defendants' conduct was not so egregious or outrageous that it would shock the contemporary conscience.

If a plaintiff claims that a state actor injured her through some failure to act the plaintiff is required to prove that the actor was at least deliberately indifferent to the constitutional rights allegedly violated. It cannot amount to mere negligence. To meet the threshold of constitutional due process the conduct must be "so egregious, so outrageous that it may fairly be

said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). The Court of Appeals for the District of Columbia has stated that the plaintiff must prove at minimum that the state actor was deliberately in different to her constitutional rights and "that the conduct was conscience shocking." *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006). In *Phillips*, the court stated that prior notice that substantial harm would occur without changes to firefighters' standard operating procedures was enough. In addition, the court has stated that such a "stringent requirement exists to differentiate substantive due process, which is intended only to protect against arbitrary government action, from local tort law." *Butera* 235 F.3d at 651.

Plaintiffs' complaint lacks any allegation that would amount to conduct that was so egregious or outrageous that it shocks the conscience. The Plaintiffs in this case have simply alleged that "Defendants Friendship and Academy each subjected J.G. and S.G. to violations of their right to personal security and bodily integrity and equal protection of laws by: failing to adequately train and supervise Defendants Friendship and Academy personnel, which manifested deliberate indifference to the sexual assault and ongoing harassment of J.G. and S.G. by other students, including but not limited to, D.B. and E.E." ¶ 192.

The Complaint makes numerous legal conclusions concerning the Defendants' failure to "train and supervise" but does not contain any facts supporting these conclusions. Even if facts existed and were pled concerning a lack of training or supervision of Friendship or Academy personnel, that failing would not amount to a deliberate indifference. There are no facts alleging further harassment of J.G. and S.G. They were not subject to additional sexual assault by D.B. and E.E. The complaint does not even allege that J.G. and S.G. came into contact with or communicated with D.B. and E.E. following May 19, 2015. Nor is there adequate facts alleged

concerning a failure to train or supervise with J.G. and S.G.'s complaints about "ongoing harassment" by other students. Again, the only facts that are alleged concerning "ongoing harassment" are that other students gossiped, ostracized the plaintiffs, and called them names. None of this appeared to be motivated by sex. Even if it had been, it is entirely unreasonable to hold the school liable for statements made by other students that are entirely outside of the control of the school. Finally, the defendants cannot be liable for deliberate indifference that shocks the conscience when it is alleged that both plaintiffs were accommodated by the school and allowed to continue their studies from home in order to prevent additional harassment.

Just like with Count I and II, Count III does nothing more than make conclusory allegations devoid of any facts, much less, any facts that would support a claim that that the defendants were acting under color of law, that the plaintiffs were deprived of their constitutional rights because other students call them names, or that defendants were deliberately indifferent to the extent that it shocks the contemporary conscience.

### D. COUNT IV fails to state facts sufficient to establish *"Monell"* liability.

The Plaintiffs' Count IV fails for the same reason Count III fails. The Defendants incorporate the argument *supra* at C.1. herein. Simply put, the Defendants are not state actors. Nor did the Defendants act under color of law.

In *City of Canton v. Harris*, the Supreme Court held that a municipality can be held liable under 42 U.S.C. § 1983 for inadequate training of its employees only where such failure to train amounts to deliberate indifference to the rights of the persons affected. 489 U.S. 378*,* 388, 109 S.Ct. 1197,  (1989).  A deliberately indifferent policy or custom is "deemed to be the moving force of a constitutional injury if the `conduct is a substantial factor in bringing about the harm.'" The policy or custom must be "closely related to the ultimate injury," and the court should

inquire whether "the injury [would] have been avoided" in its absence. *Smith v. District of Columbia*, 413 F.3d 86 (D.C. Cir., 2005)(quoting *City of Canton,* 489 U.S. 378).  In other words, the policy must have caused the harm:

> Causation would exist if, for instance, the municipality or one of its policymakers explicitly adopted the policy that was "the moving force of the constitutional violation." ... Or a policymaker could knowingly ignore a practice that was consistent enough to constitute custom.... Or the municipality may not have responded "to a need ... in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations."

*Warren v. District of Columbia,* 353 F.3d 36, 39 (D.C.Cir.2004) (internal quotations and citations omitted).

In this case, the Plaintiffs simply alleged that title IX imposes upon recipients funds to adopt policies consistent with promulgated regulations. The Plaintiffs enumerate certain failures with regard to the Defendants grievance procedure.  ¶ 205.  Even assuming that these allegations are true, there is no link between these failures and any harm that arises to a "deliberate indifference" to Plaintiffs' Constitutional rights.

There is also a glaring lack of any allegation linking inadequate training to the initial May 19, 2015 incident.  What is also lacking is any allegation concerning how additional training or even strict adherence to the stated school policy would have prevented the Plaintiffs from being subjected to "gossip", ostracized, or called a "snitch."  Again, the Plaintiffs allegations of Constitutional deprivation are focused on the "resulting harassment."  That resulting harassment is entirely hypothetical, as the Plaintiffs were not sexually assaulted subsequent to May 19, 2015, and did not have unwanted contact with E.E. or D.B.  The vague allegations of gossip, ostracization, and bullying by students other than the alleged assailants do not -- by any stretch -- result from a failure to adequately train employees on sexual harassment policy.  Quite simply, no causal link exists.  The Complaint unreasonably assumes that in order for the Defendants to

adequately protect the Plaintiffs Constitutional rights, the Defendants would need to assert

absolute control over the speech of all other students.

### E.  COUNT V fails to state claim for gross negligence under the law of the District of Columbia.

Pursuant to D.C. Code §38-1802.04(c)(17)(A), Defendants are immune from civil

liability except for acts or omissions constituting gross negligence, an intentional tort or a crime.

That statute states in pertinent part:

> (17) Immunity from civil liability. –
> (A) In general. – A public charter school, and its incorporators, Board of Trustees, officers, employees, and volunteers, shall be immune from civil liability, both personally and professionally, for any act or omission within the scope of their official duties unless the act or omission:
> (i) Constitutes gross negligence;
> (ii) Constitutes an intentional tort; or
> (iii) Is criminal in nature

In general, the law of the District of Columbia does not recognize degrees of negligence

as a general rule.  Courts have only analyzed whether a defendant acted with gross negligence in

limited circumstances.  *District of Columbia v. Walker,* 689 A.2d 40, 44-45 (D.C. 1997).  District

of Columbia Courts have never defined "gross negligence" in the context of D.C. Code §38-

1802.04(c)(17)(A).

In other cases, where it has been defined, the District of Columbia Courts have explained

gross negligence as "[t]he failure to exercise even slight care," "such negligence as would shock

fair-minded men" or an "extreme departure from the ordinary standard of care."  *District of

Columbia v. Walker,* 689 A.2d 40, 44 (D.C. 1997)(quoting *Shea v. Fridley,* 123 A.2d 358, 363

(D.C. 1956); *Wager v. Pro,* 195 U.S. App. D.C. 423, 428, 603 F.2d 1005, 1010 (1979)).

Likewise Courts have required a showing of bad faith on the part of the actor or a disregard for

the risk that was so obvious that the actor knew that it was highly probable harm would occur.

*Id.* at 44-45. To determine whether a defendant acted with gross negligence, the courts applying the law of the District of Columbia will start with an examination of the standard of care which must be breached in order to find ordinary or simple negligence. Then, the court can examine the magnitude of the Defendants alleged deviation from that standard of care. *Id.* at 45.

This case does not involve such an extreme deviation from the ordinary standard of care that would shock fair-minded men, evidence bad faith on the part of the defendants, or demonstrate a risk so great that the defendants knew was highly probable that the injury would occur.

On the contrary, the complaint in this case simply repeats the general legal conclusions concerning a reckless indifference to the health and safety of Plaintiffs on the part of the Defendants. The complaint simply alleges that defendants "conduct as described herein is an extreme departure from the ordinary care to be exercised by an educational institution"; that defendants "acted with conscious indifference" to Plaintiffs' safety; defendants "action or inaction as described herein wantonly, willfully and recklessly disregarded the rights and safety of" plaintiffs; that the injury occurred as a result of defendants "extreme deviation from the ordinary standard care and his wanton, willful as well as reckless disregard and conscious indifference for" plaintiffs' safety. The law require more than bare legal conclusions and formulaic recitation of the elements of a cause of action for gross negligence. But that is all that the Plaintiffs offer in this complaint.

Again, in the instant case, there is no allegation that the Defendants knew that E.E and D.B would engage in the conduct alleged. There is no basis to infer that the Defendants departed from the standard of care in an extreme way. There is no evidence that Defendants knew that E.E. and D.B. had a propensity for sexual aggression, or outrageous conduct, and deliberately

turned a blind eye. To find that defendants' acts or omissions constitute gross negligence, the plaintiff must allege some factual basis from which the court can infer that Defendants were aware that harm would result from failing to supervise this group of students. Similarly the facts must allege some reason for the Defendants to know that the risk to the health and safety of the students was great and that Defendants ignored that risk. There is no allegation that either of the aggressors was acting on behalf of the Defendants or that the Defendants were complicit in E.E.'s and D.B.'s intent. In other words, there is no fact from which the court can infer Defendants acted in bad faith.

**F. COUNT VI of Plaintiffs' Complaint fails to state a claim for negligent infliction of emotional distress against Defendants under the law of the District of Columbia.**

The District of Columbia recognizes the tort of negligent infliction of emotional distress in very limited circumstances. *Hedgepath v. Whitman Walker Clinic*, 22 A.3d 789 (2011). There are those cases where the negligent infliction of emotional distress is the result of the defendant placing the plaintiff in a "zone of physical danger" due to the defendant's negligence. These cases require that there be a real danger of physical injury and that the resulting emotional injury be serious and verifiable. The second class of negligent infliction of emotional distress cases involve a "special relationship or undertaking" by the defendant with regard to the plaintiff's emotional health or well-being.

The Plaintiffs in the instant case have not alleged a zone of physical danger caused by defendants negligence. Nor have the plaintiffs adequately alleged that a special relationship exists between the defendant and the plaintiff's with regard to the plaintiffs emotional well-being.

1.  **The Plaintiff's failed to allege that Defendants placed them in a zone of physical danger.**

In negligent infliction of emotional distress cases, the "zone of physical danger rule" allows for a recovery for emotional distress only if the defendant's actions caused the plaintiff to be in immediate danger of bodily harm and if the plaintiff feared for her own safety. *Hedgepath*, 22 A.3d at 796-97. The rationale being that "a near miss may be as frightening as a direct hit." *Id.* at 811 (quoting *Williams v. Baker* 572 A.2d 1062, 1067 (D.C. 1990)(*en banc*)(applying "zone of physical danger rule"). In this case, the plaintiffs failed to allege that the lack of supervision placed them in fear of immediate physical injury. The facts simply do not allege a near miss as contemplated by the rule. To the contrary, no act or omission of the defendants placed the plaintiffs in a fear of physical danger. To the contrary, as discussed above, the fear of physical injury was caused by the unforeseeable intentional acts of E.E. and D.B.

2.  **The Plaintiffs failed to allege that Defendants undertook a duty towards the Plaintiffs' emotional well-being and failed to allege facts that support a special relationship existed between Defendants and Plaintiffs.**

In *Hedgepath*, the Court of Appeals of the District of Columbia adopted the following rule for negligent infliction of emotional distress as an alternative to the "zone of physical danger rule":

> We hold that a plaintiff may recover for negligent infliction of emotional distress if the plaintiff can show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiffs emotional well-being, (2) there is an especially likely risk that the defendants negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff.

The Court discussed application of this rule indicating that it would only apply in cases where a relationship or undertaking implicated the plaintiff's emotional well-being. The Court explained that psychiatrist/therapist and patient, and certain other doctor-patient relationships involved the plaintiff's emotional well-being such that it is foreseeable that a breach of the standard of care

would cause an intense emotional response.  Likewise, a hospital misinforming one of a loved one's death, or the mishandling of a corpse by funeral home might form the basis of a claim for negligent infliction of emotional distress.  *Id. at* 812-15.  The court cautioned that the list was not controlling.  But in each example, there was a special relationship such that it is foreseeable that severe emotional distress would result from a breach of the standard of care. *Id.*  at 818-19.

In this case, there is no relationship between Defendants and the students such that a failure to supervise a classroom would cause severe emotional distress.  There is no undertaking directly implicating the Plaintiffs' emotional well-being.  Any  emotional distress that the plaintiffs allegedly suffered was a direct result of the unforeseeable intentional acts of E.E. and D.B. rather than a breach of an ascertainable obligation on the part of the Defendants implicating the Plaintiffs' emotional well-being.

**G. The Plaintiffs fail to allege a sufficient basis for recovery against Defendants Academy and Hense.**

**1.   Plaintiffs have failed to allege a basis for individual liability against Defendant Hense.**

The Plaintiffs have not alleged any act or omission by Hense as an individual or any basis for this Court to impose civil liability as an individual.  In addition, Hense enjoys qualified immunity under the law of the District of Columbia.  D.C. Code §38-1802.04(c)(17)(A), states in pertinent part:

> (17) Immunity from civil liability. –
> (A) In general. – A public charter school, and its incorporators, Board of Trustees, officers, employees, and volunteers, shall be immune from civil liability, both personally and professionally, for any act or omission within the scope of their official duties unless the act or omission:
> (i) Constitutes gross negligence;
> (ii) Constitutes an intentional tort; or
> (iii) Is criminal in nature

The Plaintiffs have not alleged any facts from which the Court could infer that Defendant Hense acted in an individual capacity rather than an official capacity. Therefore, the plaintiffs have failed to allege any set of facts from which the court could reasonably infer that Defendant Hense should be held personally liable as alleged.

In addition, the Plaintiffs have failed to allege any set of facts from which the court could pierce the corporate veil to hold Hense personally liable for Defendant Academy and Defendant Friendship's acts or omissions.

2. **Plaintiffs have failed to allege a basis for liability against Defendant Academy.**

Based on the allegations contained in the Complaint, Defendant Friendship Charter Public School, Inc. ("Defendant Friendship") is a corporation registered in the District of Columbia that owns and operates Defendant Academy, among other public charter schools. The Complaint, however, fails to allege that Defendant Academy is a separate legal entity with the capacity to sue or be sued. Defendant Hense is allegedly a person. Defendant Friendship is allegedly a corporation. The Complaint does not allege sufficient facts concerning Defendant Academy such that a claim can be made against it.

**H. The Plaintiffs claims should be dismissed and/or severed as the claims are misjoined under FRCP 20.**

Federal Rule of Civil Procedure 20 sets forth the requirement for joining parties as Plaintiffs.

(a) PERSONS WHO MAY JOIN OR BE JOINED.

   (1) *Plaintiffs*. Persons may join in one action as plaintiffs if:

     (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

     (B) any question of law or fact common to all plaintiffs will arise in the action.

The Plaintiffs in this case do assert any right to relief jointly or severally. The Plaintiffs each seek compensatory and punitive damages. While it is true that the D.B. committed sexually offensive acts towards S.G. and E.E. committed sexually offensive acts towards J.G. at roughly the same time, the Defendants are alleged to have acted separately as far as it concerns discipline of the offenders and accommodation of the Plaintiffs. In addition, insofar as each Plaintiff alleges compensatory and punitive damages, the case are distinct. As such, the claims should be severed or dismissed.

## V. CONCLUSION

WHEREFORE for the reasons stated herein, Defendants, by counsel, pursuant to Rule 12 of the Federal Rules of Civil Procedure, respectfully request that this Court move to dismiss the Plaintiffs' Complaint with prejudice.

Respectfully Submitted,

___/s/_____
Joseph F. Giordano
DC Bar Number: 382286
SEMMES, BOWEN & SEMMES
1577 Spring Hill Rd., Suite 200
Vienna, VA 22182
Telephone: (703) 760-9473
Facsimile: (703) 356-6989
jgiordano@semmes.com
Attorney for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of July, 2016 a copy of the foregoing

Defendants' Memorandum of Points and Authorities in Support of Defendants' Rule 12(b)(6)

Motion to Dismiss was served on:

Billy L. Ponds
The Ponds Law Firm
D.C. Bar Number 379883
1250 24th Street N.W.
Suite 300
Washington, D.C. 20007
plfpc@aol.com


_____/s/_____
Joseph F. Giordano
DC Bar Number: 382286
SEMMES, BOWEN & SEMMES
1577 Spring Hill Rd., Suite 200
Vienna, VA 22182
Telephone: (703) 760-9473
Facsimile: (703) 356-6989
jgiordano@semmes.com
Attorney for Defendants